**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KEJUAN JENKINS,

      Plaintiff,

v.

      Case No. 24-cv-2413-NJR

HUNTER HOUSE, VINCENT KIEFER,
JARED PHILLIPS, THOMAS QUINN,
and JOSHUA SCHOENBECK,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Kejuan Jenkins, who at the time he filed his Complaint was an inmate of the Illinois Department of Corrections, brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Defendants filed a motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 39, 40). Jenkins was given notice of the motion (Doc. 41), but, as of this date, has failed to file a response.

### BACKGROUND

On October 31, 2024, Jenkins's claims in this case were severed from his claims in *Jenkins v. Wills, et al.*, Case No. 24-cv-00476-SPM (Doc. 1). His allegations in this case relate to an incident with correctional officers that allegedly occurred on October 12, 2023 (Doc. 15, p. 2). Jenkins and other inmates were escorted to their cells with their hands cuffed behind their backs (*Id.*). Jared Phillips directed Jenkins to pull up his sagging pants, but Jenkins informed Phillips that he could not perform the task due to his hands being

1

behind his back and having a previous shoulder injury (*Id.*). Phillips threatened him with
segregation, Jenkins requested help in pulling up his pants, and Phillips escorted him to
segregation (*Id.*).

Four days later, on October 16, 2023, Jenkins was escorted from segregation to the
healthcare bullpen where Hunter House, Vincent Kiefer, and Thomas Quinn allegedly
beat and maced him at the direction of Phillips and Joshua Schoenbeck (*Id.*). Jenkins was
returned to his cell. An officer sprayed his mattress with mace. Quinn instructed House
to turn off the water to Jenkins's cell.

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Jenkins was
allowed to proceed on the following counts:

> Count 1:    Eighth Amendment excessive force claim against Phillips,
> House, Quinn, Kiefer, and Schoenbeck for spraying Jenkins
> with mace and physically assaulting him.
>
> Count 2:    Eighth Amendment cruel and unusual punishment claim
> against Quinn and House for spraying Jenkins's mattress
> with mace and turning off the water to his cell.

(Doc. 15, p. 2).

### A. Summary Judgment Motion

Defendants argue that Jenkins failed to submit any grievances regarding the use
of force or conditions of his segregation cell prior to filing his lawsuit. They offered the
grievance records from Menard Correctional Center and the Administrative Review
Board ("ARB"). They also offered the affidavit of grievance officer Jacob Guetersloh
(Doc. 40-5) who attested that grievances received from inmates at Menard are
documented and tracked on documents called Grievance Logs (*Id.* at p. 3). Each grievance

is assigned a number when received and that number is documented in both the

Grievance Logs and an inmate's CHAMPS notes ("Comprehensive Housing And

Management Placement System") (*Id*. at pp. 3-4). Further, each level of the grievance

process is documented in both the Grievance Logs and CHAMPS notes (*Id*. at p. 4).

Guetersloh indicated that he was asked to review the grievance records for grievances

filed by Jenkins from April 2022 through December 2024, specifically looking for

grievances related to the events of October 12, 2023, and October 16, 2023 (*Id*. at p. 5).

He was unable to locate any grievances regarding an assault by officers or Jenkins's

placement in a cell sprayed with mace and lacking access to water (*Id*.).

Defendants also offered the affidavit of Ryan Nothnagle, the chairperson of the

ARB who reviews grievances submitted by inmates (Doc. 40-3). Nothnagle noted that

grievances received by the ARB are maintained in a log, labeled IGRV, which documents

all grievances received by the ARB from a particular inmate (*Id*. at p. 3). The ARB also

maintains paper copies of all appeals consisting of the grievances and attached

correspondence (*Id*. at p. 4). Nothnagle also reviewed Jenkins's IGRV logs for grievances

regarding the incidents alleged in Jenkins's Complaint (*Id*.). Nothnagle identified only

one grievance, dated March 4, 2024, which Nothnagle noted mentioned an incident where

Jenkins was punished for sagging his pants in October 2023 (*Id*.).

> **March 4, 2024 Grievance**: Jenkins's grievance indicates that it is related to
> a disciplinary report issued October 12, 2023 (Doc. 40-2, p. 13). Jenkins notes
> that on February 15 he spoke to Lieutenant Dye about threats to his safety
> from people who approached him with knives and instructed him to
> transfer from the East cellhouse (*Id*.). Dye told Jenkins he would have to
> request protective custody. Jenkins checked into protective custody and
> was informed by staff that a new memo prohibited inmates from having

3

their property with them in protective custody (*Id.*). Jenkins inquired as to
whether he could keep his mail, pictures, and books but was informed that
he could only have the items that were specifically allowed by the new
policy (*Id.* at p. 14). Jenkins also noted that the prison was cold and he
believed the temperature was intended to encourage inmates to check out
of protective custody (*Id.*). Jenkins alleged that the conditions and lack of
access to property and commissary constituted unconstitutional conditions
of confinement (*Id.*).

Jenkins's grievance also noted that he received a "bogus ticket" for sagging
his pants while he was handcuffed (Doc. 40-2, p. 14). He alleges the ticket
affected his aggression level. Jenkins alleged that he should not have been
placed in the East cellhouse and that internal affairs acknowledged that
gangs threatened to jump him, but he remains in protective custody intake
instead of actual protective custody (*Id.*). Jenkins requested a transfer to
another prison where he could receive good time, noting that he only had
12 months left on his sentence (*Id.*).

Jenkins marked his grievance as an emergency (Doc. 40-2, p. 13). On March
7, 2024, the ARB received the grievance (*Id.*). On March 21, 2024, Nothnagle
returned the grievance because it lacked a counselor and grievance officer
response (*Id.* at p. 12). There is no other record of this grievance in Menard's
grievance files (Do. 40-6; 40-4).

The ARB did receive a grievance officer's report from Jenkins that is dated

during the relevant time period. On September 26, 2024, the ARB received a

grievance officer's report from October 24, 2023 (Doc. 40-2, p. 3). The report notes

that Jenkins submitted a grievance dated October 19, 2023, complaining that he

had not been able to obtain medical care after multiple sick calls for throwing up

blood (Doc. 40-2, p. 3). The ARB returned the grievance for Jenkins's failure to

provide a copy of the actual grievance (*Id.* at p. 2). Further, the grievance does not

appear to relate to any of the issues in Jenkins's Complaint.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative

remedies" are not required to be decided by a jury but are to be determined by the judge.[1]

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## A. Illinois Exhaustion Requirements

As an IDOC inmate, Jenkins was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures

---

[1] Recently the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479. Here, the issue of exhaustion is not intertwined with the merits of Jenkins's underlying claims. Thus, *Perrtu* is not applicable.

first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal.

*Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

### ANALYSIS

After filing their summary judgment motion, Defendants certified that they provided notice of their motion to Jenkins by mailing the motion to his designated

8

address.[2] Despite receiving notice of the motion, Jenkins failed to file a response. Because Jenkins failed to respond to Defendants' statement of facts, the Court accepts the statement of facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). *See also* SDIL Local Rule 56.1(g) ("All material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The admission of the material facts, however, does not automatically grant Defendants summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

Here, Jenkins failed to exhaust his administrative remedies as to any defendant. Jenkins failed to file any grievances related to the alleged incident of excessive force or the conditions of his cell while in segregation. There are simply no grievances on the docket related to his claims. Only one grievance on the record even mentions issues with his sagging pants. In his Complaint, Jenkins alleged that an issue with his sagging pants on October 12, 2023, led to his placement in segregation and preceded the use of force incident on October 16, 2023. Jenkins's March 2024 grievance detailed above mentions the ticket issued for sagging pants on October 12, 2023, but the grievance lacks any allegations regarding the defendants' use of force or his conditions in segregation. He only mentions the disciplinary ticket in passing, and his grievance focuses mostly on his conditions in protective custody, particularly focusing on his access to his personal

---

[2] Because he expressed safety concerns, Jenkins's address remains under seal.

property and temperature in the unit during his stay in February 2024. The grievance also

fails to mention any of the defendants by name. The grievance simply fails to exhaust

Jenkins's claims in this case.

Even if the grievance included the claims from this case, Jenkins failed to properly

exhaust the March 2024 grievance. It appears that he submitted the grievance directly to

the ARB. The grievance is dated March 4, 2024, and it was received by the ARB on March

7, 2024 (Doc. 40-2, p. 13). The grievance lacks any response from either a counselor or

grievance officer. Although some grievances may be submitted directly to the ARB if they

contain issues dealing with protective custody placement (among other issues not

relevant to this case), Jenkins's grievance only complained about the conditions he

experienced in protective custody. 20 Ill. Admin. Code § 504.870(a)(1). The ARB rejected

the grievance for lacking a response from the counselor and grievance officer (Doc. 40-2,

p. 12). When a grievance is rejected on procedural grounds, and not on the merits of the

complaint, the grievance remains unexhausted. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir.

2011) (quoting *Dole*, 438 F.3d at 808). Thus, even if Jenkins's grievance properly included

the claims in this lawsuit, he failed to exhaust the grievance by failing to submit it to

prison grievance officials.

There are no other grievances in the record that could serve to exhaust Jenkins's

claims, nor has Jenkins pointed to any additional grievances. Nor is there any evidence

to suggest that the grievance process was somehow unavailable to him. Jenkins simply

failed to file any grievances regarding the use of force by House, Kiefer, Phillips, Quinn,

10

and Schoenbeck, or regarding his conditions in segregation after the use of force incident.

Thus, Jenkins failed to exhaust his administrative remedies.

### CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Docs. 39, 40) is **GRANTED**. Jenkins's claims are **DISMISSED without prejudice** for his failure to exhaust his administrative remedies. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  January 12, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**